PAE AO 241
(Rev. 07/10)

Page 1



## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District:  Eastern District of Pennsylvania |
|---|---|
| **Name (under which you were convicted):**<br><br>Steven Lazar | **Docket or Case No.:**<br><br>14   6907 |
| **Place of Confinement:**<br>SCI Fayette, LaBelle, PA | **Prisoner No.:**<br>JN2439 |
| **Petitioner** (Include the name under which you were convicted):<br><br>Steven Lazar | **Respondent** (Name of Warden, Superintendent, Jailor, or authorized person having custody of petitioner):<br><br>Brian V. Coleman, Superintendent |

v.

and

The District Attorney of the County of: Philadelphia

and

The Attorney General of the State of: Pennsylvania

### PETITION

1. (a) Name and location of court that entered the judgment of conviction you are challenging:
Court of Common Pleas of Philadelphia County

   (b) Criminal docket or case number (if you know): CP 51 CR 2056-2008

2. (a) Date of judgment of conviction (if you know): May 11, 2010

   (b) Date of sentencing: May 11, 2010

3. Length of sentence: Life without parole

4. In this case, were you convicted on more than one count or of more than one crime?  ⊙ Yes   ☐ No

5. Identify all crimes of which you were convicted and sentenced in this case: Second Degree Murder, Robery, Possession of an Instrument of Crime

PAE AO 241
(Rev. 07/10)

Page 5

6.  (a)  What was your plea?  (Check one)
    G (1)  Not Guilty                    G (3)  Nolo contendere (no contest)
    G (2)  Guilty                        G (4)  Insanity plea

    (b)  If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge,
         what did you plead guilty to and what did you plead not guilty to? _____

    (c)  If you went to trial, what kind of trial did you have?  (Check one)
         G    Jury                       G    Judge only

7.  Did you testify at a pretrial hearing, trial, or a post-trial hearing?
    G    Yes                             G    No

8.  Did you appeal from the judgment of conviction?
    G    Yes                            G    No

9.  If you did appeal, answer the following:
    (a)  Name of court: Superior Court of Pennsylvania
    (b)  Docket or case number (if you know): 1375 EDA 2010
    (c)  Result: Affirmed
    (d)  Date of result (if you know): August 2, 2011
    (e)  Citation to the case (if you know): _____
    (f)  Grounds raised: Suppression

PAE AO 241
(Rev. 07/10)

Page 6

(g)   Did you seek further review by a higher state court?          G   Yes      G   No

If yes, answer the following:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Result: _____

(4) Date of result (if you know): _____

(5) Citation to the case (if you know): _____

(6) Grounds raised: _____

_____

_____

_____

(h)   Did you file a petition for certiorari in the United States Supreme Court?   G   Yes   G   No

If yes, answer the following:

(1) Docket or case number (if you know): _____

(2) Result: _____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

10.   Other than the direct appeals listed above, have you previously filed any other petitions, applications, or
motions concerning this judgment of conviction in any state court?          G   Yes      G   No

11.   If your answer to Question 10 was "Yes," give the following information:

(a)   (1) Name of court:  Court of Common Pleas, Philadelphia County

(2) Docket or case number (if you know):  CP 51 CR 2056-2008

(3) Date of filing (if you know):  June 20, 2012

(4) Nature of the proceeding:  Post Conviction Relief Act

(5) Grounds raised: Ineffectiveness in failing to prove petitioner
was in methadone withdrawal during his two days in police
custody, making his confession unreliable and/or involuntary,
and furthermore ineffectiveness in failing to procure and/or
present other evidence corroborating evidence that he was
in pain during custodial interrogation.

Additional claims of ineffective assistance of counsel,
Brady and Due Process violations.

_____

_____

_____

PAE AO 241
(Rev. 07/10)

Page 7

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

G   Yes          G   No

(7) Result: __Relief denied__

(8) Date of result (if you know): __July 15, 2013__

(b)   If you filed any second petition, application, or motion, give the same information:

(1) Name of court: __N/A__

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

G   Yes          G   No

(7) Result: __N/A__

(8) Date of result (if you know): _____

(c)   If you filed any third petition, application, or motion, give the same information:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

PAE AO 241
(Rev. 07/10)

Page 8

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

G   Yes                    G   No

(7) Result: _____ Relief denied _____

(8) Date of result (if you know): ___ July 15, 2013 ___

(d)   Did you appeal to the highest state court having jurisdiction over the action taken on your petition,
application, or motion:

(1)   First petition:        G   Yes          G   No

(2)   Second petition:       G   Yes          G   No

(3)   Third petition:        G   Yes          G   No

(e)   If you did not appeal to the highest state court having jurisdiction, explain why you did not:

_____

_____

12.   For this petition, state every ground on which you claim that you are being held in violation of the
Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four
grounds. State the facts supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-
court remedies on each ground on which you request action by the federal court. Also, if you fail to set
forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

GROUND ONE: Petitioner was denied effective counsel by the failure
to prove he was in methadone withdrawal.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): Petitioner
was convicted primarily on a confession.  His jury was told that
he was off methadone for a month and fine throughout his custodial
interrogation.
In fact, petitioner had methadone one day before his arrest and
was in the throes of methadone withdrawal during interrogation.

_____

_____

PAE AO 241
(Rev. 07/10)

(b) If you did not exhaust your state remedies on Ground One, explain why: _____

_____

_____

_____

#### (c) Direct Appeal of Ground One:

(1) If you appealed from the judgment of conviction, did you raise this issue?

G   Yes            G   No

(2) If you did not raise this issue in your direct appeal, explain why? Raised post-conviction,
at earliest opportunity, as an ineffective assistance claim.

_____

#### (d) Post-Conviction Proceedings:

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a
state trial court?

G   Yes            G   No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:  P.C.R.A.

Name and location of the court where the motion or petition was filed: Philadelphia
Court of Common Pleas

Docket or case number (if you know): CP 51 CR 2056-2008

Date of the court's decision:  July 15, 2013

Result (attach a copy of the court's opinion or order, if available): see attached

_____

(3) Did you receive a hearing on your motion or petition?         G   Yes        G   No

(4) Did you appeal from the denial of your motion or petition?    G   Yes        G   No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

G   Yes            G   No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: Superior Court of Pennsylvania

_____

Docket or case number (if you know):  2191 EDA 2013

Date of the court's decision:  July 23, 2014

PAE AO 241
(Rev. 07/10)

Result (attach a copy of the court's opinion or order, if available): See attached

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: Petition for Allowance of Appeal to Pennsylvania Supreme Court

**GROUND TWO:**

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b) If you did not exhaust your state remedies on Ground Two, explain why:

(c) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

G     Yes                    G     No

PAE AO 241
(Rev. 07/10)

(2) If you did not raise this issue in your direct appeal, explain why? _____

_____

_____

**(d) Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a

state trial court?

        G   Yes           G   No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(3) Did you receive a hearing on your motion or petition?       G   Yes      G   No

(4) Did you appeal from the denial of your motion or petition?   G   Yes      G   No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

        G   Yes           G   No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise

this issue: _____

_____

_____

_____

PAE AO 241
(Rev  07/10)

(e)  **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two: _____

_____

_____

_____

**GROUND THREE:** _____

_____

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Three, explain why: _____

_____

_____

_____

(c) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

G    Yes               G    No

(2) If you did not raise this issue in your direct appeal, explain why? _____

_____

_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

G    Yes               G    No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition?               G   Yes        G   No

(4) Did you appeal from the denial of your motion or petition?          G   Yes        G   No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

                    G   Yes                    G   No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise

this issue: _____

_____

_____

_____

(e)        **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies,

etc.) that you have used to exhaust your state remedies on Ground Three: _____

_____

_____

**GROUND FOUR:** _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

PAE AO 241
(Rev. 07/10)

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Four, explain why: _____

_____

_____

_____

_____

(c) **Direct Appeal of Ground Four:**

   (1) If you appealed from the judgment of conviction, did you raise this issue?

            G    Yes            G    No

   (2) If you did not raise this issue in your direct appeal, explain why? _____

   _____

   _____

(d) **Post-Conviction Proceedings:**

   (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

            G    Yes            G    No

   (2) If your answer to Question (d)(1) is "Yes," state:

   Type of motion or petition: _____

   Name and location of the court where the motion or petition was filed: _____

   _____

   Docket or case number (if you know): _____

   Date of the court's decision: _____

   Result (attach a copy of the court's opinion or order, if available): _____

   _____

   (3) Did you receive a hearing on your motion or petition?     G    Yes     G    No

   (4) Did you appeal from the denial of your motion or petition?     G    Yes     G    No

PAE AO 241
(Rev. 07/10)

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

G    Yes                    G    No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise

this issue: _____

_____

_____

_____

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies,

etc.) that you have used to exhaust your state remedies on Ground Four: _____

_____

_____

_____

_____

_____

13.    Please answer these additional questions about the petition you are filing:

(a)     Have all grounds for relief that you have raised in this petition been presented to the highest state

court having jurisdiction?                    G    Yes          G    No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for

not presenting them: _____

_____

_____

_____

PAE AO 241
(Rev. 07/10)

(b)   Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:  _____ No _____

_____

_____

14.   Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?     G   Yes     (G   No)

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available. _____

_____

_____

_____

_____

_____

15.   Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?     G   Yes     (G   No)

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised: _____

_____

_____

_____

16.   Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a)   At preliminary hearing:   David Conroy, 301 Wharton St, Phila. PA 19147

_____

(b)   At arraignment and plea:   _____ same _____

_____

PAE AO 241
(Rev. 07/10)

(c)   At trial: _____ same _____

(d)   At sentencing: _____ same _____

(e)   On appeal: _Brian McMonagle, 30 S. 15th Street, Philadelphia, PA 19102

(f)   In any post-conviction proceeding: Jules Epstein, 718 Arch Street, Suite 501S Philadelphia, PA 19106

(g)   On appeal from any ruling against you in a post-conviction proceeding: _____
_____ same _____

17.   Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?                                        G   Yes        Ⓖ   No

(a)   If so, give the name and location of the court that imposed the other sentence you will serve in the future: _____
_____

(b)   Give the date the other sentence was imposed: _____

(c)   Give the length of the other sentence: _____

(d)   Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?                          G   Yes        G   No

18.   **TIMELINESS OF PETITION:** If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition*
_____ Timely _____
_____
_____
_____
_____

PAE AO 241
(Rev. 07/10)

Page 18

_____

_____

_____

_____

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1)    A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court. The limitation period shall run from the latest of -

    (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

    (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.


Therefore, petitioner asks that the Court grant the following relief:   A new trial

_____

_____

_____

or any other relief to which petitioner may be entitled.


Signature of Attorney (if any)

Jules Epstein
718 Arch Suite 501 South
Philadelphia Pa. 19106

PAE AO 241
(Rev. 07/10)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on _____.

Executed (signed) on ___10/17/14_____ (date).

_____
Signature of Petitioner

If the person signing is not the petitioner, state the relationship to petitioner and explain why petitioner is not signing this petition. _____

_____

_____

_____

_____



## Supreme Court of Pennsylvania

**Eastern District**

John W. Person Jr., Esq.
Deputy Prothonotary
Patricia A. Johnson
Chief Clerk

468 City Hall
Philadelphia, PA 19107
(215) 560-6370
www.pacourts.us

December 2, 2014

Jules Epstein, Esq.
Kairys, Rudovsky, Messing & Feinberg, LLP
718 Arch Street, Suite 501 South
Philadelphia, PA  19106

RE:   Commonwealth v. Lazar, S., Pet.
      No. 391 EAL 2014
      Lower Appellate Court Docket No:  2191 EDA 2013
      Trial Court Docket No:  CP-51-CR-0002056-2008

Dear Attorney Epstein:

   Enclosed please find a certified copy of an order dated December 2, 2014 entered in the above-captioned matter.

                              Very truly yours,
                              Office of the Prothonotary

/rdh
Enclosure
cc:  Hugh J. Burns Jr., Esq.
     The Honorable Rose Marie DeFino-Nastasi, Judge
     Mary L. Huber, Esq.

**IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT**

COMMONWEALTH OF PENNSYLVANIA, : No. 391 EAL 2014
:
                Respondent       :
                        : Petition for Allowance of Appeal from the
                        : Order of the Superior Court
        v.             :
                        :
                        :
STEVEN LAZAR,              :
                        :
                Petitioner       :

## ORDER

**PER CURIAM**

     **AND NOW**, this 2nd day of December, 2014, the Petition for Allowance of Appeal is **DENIED**.

True Copy
Of 12/2/2014

test:
hn W. Person Jr., Esquire
eputy Prothonotary
upreme Court of Pennsylvania

J-S41015-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| STEVEN LAZAR, | |
| Appellant | No. 2191 EDA 2013 |

Appeal from the PCRA Order July 15, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002056-2008

BEFORE:  BOWES, DONOHUE, and MUNDY, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED JULY 23, 2014**

Steven Lazar appeals from the July 15, 2013 order denying him PCRA relief following an evidentiary hearing.  We affirm.

On May 11, 2010, Appellant was convicted by a jury of second-degree murder, robbery, and possession of an instrument of crime ("PIC") in the death of seventy-nine-year-old Dario Guttierrez.  The court sentenced him to life imprisonment on the murder charge and two five-to-ten-year concurrent sentences for robbery and PIC.  The decedent's decomposing body was discovered in his Philadelphia home by his daughter, Evelyn Guttierrez, on January 9, 2007.  The medical examiner placed the time of death sometime between January 6 and 8, 2007.  Death resulted from a head injury caused by a dozen blows to the decedent's face and skull inflicted by a weapon such

J-S41015-14

as a hatchet or an axe.  There was no forced entry, but the victim's wallet and keys were missing and his upstairs drawers had been ransacked.

Approximately three months after the murder, Ms. Guttierrez returned to clean out her father's home and discovered a small travel bag on a chair on the rear porch, under an awning.  Ms. Guttierrez telephoned police, who retrieved the bag and later searched it.  The bag contained clothing, a plastic gun, correspondence from a methadone clinic addressed to Appellant, and a school yearbook containing Appellant's photograph and two wallets.  The wallets contained a social security card and an access card in Appellant's name.  Police located and transported Appellant to the Homicide Unit for questioning on July 3, 2007.

Appellant admitted to Detective David Baker that the bag belonged to him, but advised the detective that he did not know why the bag was located on the decedent's porch.  He maintained that a friend had taken the bag and given it to an older man who lived three doors away from the place where he and the friend were ingesting drugs.  After taking Appellant's statement, the police returned the bag to him and permitted him to leave.

Thereafter, Appellant made statements to five people, including Russell Angely, implicating himself in the murder.  After a dispute with Appellant in November 2007, Mr. Angely called police and reported Appellant's statements.  Mr. Angely testified at trial that Appellant admitted to him that he was involved in a murder and that a hatchet was the "best

- 2 -

J-S41015-14

weapon to use" to kill someone.  Appellant made similar comments to Sarn Wilson and Mark Kedra.  June Blase and John Barry, Appellant's downstairs neighbors, testified that Appellant told them on November 17, 2007, that he would be going to jail because he killed somebody with an axe.  N.T. Trial (Jury), 5/6/10, at 85.

Police arrested Appellant on November 19, 2007, at 8:00 a.m. on an outstanding bench warrant from a neighboring county and transported him to the Homicide Unit for questioning.  Over a thirty-hour period, Appellant gave two statements to police.  In the first statement, signed at 7:20 p.m. on November 19, 2007, Appellant implicated John, a Puerto Rican man with whom he was doing drugs in an abandoned house located near the decedent's home, in the murder.  He recounted that John had talked about robbing the decedent, that he had a hatchet in his pants, and that the two separated when police drove by.  When Appellant went to the decedent's home to look for John, the door was open, the decedent was on the floor, and John, covered in blood, was ransacking drawers.

While Appellant remained in custody, police unsuccessfully attempted to locate the abandoned house or corroborate the details of Appellant's story.  Appellant remained in the interview room overnight and questioning resumed around noon the next day.  At 2:45 p.m. on November 20, 2007, Appellant gave a second statement in which he recounted that he went with John to the decedent's house to have oral sex with the decedent.  John took

- 3 -

J-S41015-14

a hatchet with him to scare the decedent.  After they performed oral sex on the decedent, the decedent tried to perform oral sex on Appellant.  Appellant struck him with his hand, knocked him backwards, and John struck the decedent with the hatchet.  John took the victim's wallet and ransacked the drawers.

Prior to trial, Appellant filed a motion to suppress his statements. After a hearing, the court denied the motion.  At trial, a jury found him guilty, the court subsequently sentenced him, and we affirmed judgment of sentence on August 2, 2011.  ***Commonwealth v. Lazar***, 32 A.3d 820 (Pa.Super. 2011) (unpublished memorandum).  On June 20, 2012, Appellant filed the within PCRA petition, his first.  Counsel was appointed and the PCRA court held an evidentiary hearing on July 15, 2013.  The PCRA court found that trial counsel was deficient in failing to glean from Appellant's subpoenaed medical records that Appellant was going through methadone withdrawal during the interrogation.  The court concluded, however, that there was no reasonable probability that the outcome of the suppression hearing or the trial would have been different had this information and expert testimony regarding withdrawal been presented.  N.T. PCRA Hearing, 7/15/13, at 15.  Hence, the court denied relief and Appellant timely filed this appeal.  Appellant presents two issues on appeal:

1. Did not the lower court err in denying P.C.R.A. relief under either a Sixth Amendment ineffectiveness analysis or a 14th Amendment Due Process analysis where appellant's conviction was based primarily upon a two-day custodial

- 4 -

J-S41015-14

interrogation regarding which his jury was told he was not a recent methadone user and was fine during the interrogation, and in fact records and expert testimony now show that had received methadone up until the day before his arrest and thus was in the throes of withdrawal during questioning, a critical factor in assessing voluntariness and the accuracy of any inculpatory statement (and innocence)?

2. Was not appellant deprived of the effective assistance of counsel and a fair trial when trial counsel failed to investigate and produce evidence that contradicted police averments that appellant was not in discomfort during interrogation and that the confession was knowing and voluntary, thereby compounding the error complained of in question 1, *supra* and entitling him to relief under a "cumulative error" standard?

Appellant's brief at 5.

"Our standard of review of the denial of a PCRA petition is limited to examining whether the court's rulings are supported by the evidence of record and free of legal error." ***Commonwealth v. Feliciano***, 69 A.3d 1270, 1274-75 (Pa.Super. 2013). "Our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the PCRA court level." ***Commonwealth v. Medina***, 2014 PA Super 108 (Pa.Super. 2014) (*en banc*) (quoting ***Commonwealth v. Koehler***, 36 A.3d 121, 131 (Pa. 2012)). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court[,]" but we review the PCRA court's legal conclusions *de novo*. ***Commonwealth v. Spotz***, 18 A.3d 244, 259 (Pa. 2011).

J-S41015-14

When we review claims of ineffective assistance of counsel, such as the claims asserted herein, we are mindful that "[c]ounsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." *Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014). In order to prove counsel ineffective in this Commonwealth, a petitioner must demonstrate all of the following: "(1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." *Id*. at 311. Prejudice involves a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id*. at 312.

Appellant also claims, in the alternative, that if counsel was not ineffective in failing to discover evidence that Appellant was going through methadone withdrawal, evidence that he was receiving daily dosages of methadone at the time of his arrest constituted after-discovered evidence that could not have been obtained with the exercise of due diligence prior to trial.

In order to obtain relief based on after-discovered evidence,

[an] appellant must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted. *Commonwealth v. Pagan*,

- 6 -

J-S41015-14

> 597 Pa. 69, 106, 950 A.2d 270, 292 (2008) (citations omitted).
> "The test is conjunctive; the [appellant] must show by a
> preponderance of the evidence that each of these factors has
> been met in order for a new trial to be warranted."
> ***Commonwealth v. Padillas***, 2010 PA Super 108, 997 A.2d
> 356, 363 (Pa.Super. 2010) (citation omitted).

***Commonwealth v. Foreman***, 55 A.3d 532, 536 (Pa.Super. 2012). When

we review the decision to grant or deny a new trial based on after-

discovered evidence, we determine whether the PCRA court committed an

abuse of discretion or error of law that controlled the outcome of the case.

***Id***.

Appellant contends first that trial counsel was deficient in failing to

examine the third set of medical records for evidence that he was receiving

daily dosages of methadone at the time of his arrest and in stipulating that,

according to clinic records, Appellant's last dosage of methadone was more

than a month before on October 24, 2007. With regard to a second

stipulation describing Appellant's self-reported symptoms upon admission to

the hospital, counsel was ineffective in omitting the fact that the symptoms

were of one day in duration.

Trial counsel testified that he requested Appellant's methadone

treatment records from the Goldman Clinic and received records that

included a printout of Appellant's methadone treatments. Counsel also

made multiple phone calls to the facility to ascertain if the records were

complete, and twice sent a paralegal to look for them. Finally, in

anticipation of trial, counsel subpoenaed the records custodian and the

- 7 -

J-S41015-14

records.  Upon receiving five hundred pages of records, counsel noted that the dosage sheet on the top was identical to those he had previously received, and he did not closely examine the subpoenaed records.  Appellant demonstrated that the subpoenaed medical records that counsel had in his possession confirmed that Appellant received his last dosage of methadone on November 18, 2007 at 10:48 a.m., which was the day before his arrest. The medical record would have supplied the factual foundation for expert medical testimony that Appellant was experiencing withdrawal from methadone when he provided those statements, and that the statements were not voluntary.  Appellant presented the expert testimony of George E. Woody, M.D., to that effect.

Dr. Woody opined that since Appellant did not receive his usual methadone dose on November 19, "it is highly likely that by the morning of the 20th, he would have been in opioid withdrawal and appeared restless, and anxious, and depressed."  N.T. Hearing, Vol. I, 5/30/13, at 23-4.  He added that one using methadone would start to withdraw twenty-four to thirty-six hours after the last dose, and "typically the person will complain of feeling sick."  *Id*. at 19-20.  The person may feel uncomfortable, and have a runny nose and eyes, vomiting and diarrhea.  The physician pointed to the Hahnemann emergency room records from the night of November 20, 2007, where Appellant reported "one-day history of shaking, some [leg] pain, and dizziness, and nausea, and diarrhea," symptoms consistent with opiate

- 8 -

J-S41015-14

withdrawal.   He was treated with Clonidine and Compazine, drugs traditionally used to treat opiate withdrawal.   Dr. Woody conceded that symptoms present gradually and a note in the medical records to the effect that the patient's insight was fair, his appearance neat and appropriate, that he was cooperative, and his speech normal in rate and rhythm, did not undermine his conclusion that Appellant was in withdrawal.   Dr. Woody concluded that Appellant's state of mind at the time he gave the statement would possibly have been "desperate or mindless," *id*. at 57, although he admitted upon cross-examination that he had not read Appellant's statement.   *Id*. at 59.   He reviewed the testimony of the police officers who conducted the interrogation and conceded that it was possible that they did not witness any indications that Appellant was in withdrawal, *id*. at 60, and that several of the drugs Appellant was taking may have suppressed withdrawal symptoms.

The Commonwealth presented the expert testimony of John Sebastian O'Brien II, M.D., a psychiatrist and attorney, and the testimony of the police officers who interrogated Appellant.   The expert concluded from his review of the records that Appellant was treated with methadone from 2005-2007, and that his last dosage prior to being arrested and interrogated was November 18, 2007 at 10:34 a.m.   He agreed with Dr. Woody that some of the other prescription medications that Appellant was taking would alleviate symptoms of opiate withdrawal, and that the hospital admission occurred

- 9 -

J-S41015-14

hours after Appellant executed his second statement to police. The expert found Appellant's answers to be very detailed and not indicative of impulsive responses. He saw no verbal expression of physical discomfort, and noted that the dose of medication prescribed at the hospital was lower than usually prescribed for treatment of opiate withdrawal symptoms. The fact that Appellant was discharged within three hours of his presentation at the emergency room suggested the symptoms were not substantial. *Id*. at 96. Notably, Dr. O'Brien testified that methadone withdrawal does not cause hallucination, inability to distinguish truth from falsehood, formation of false memory, or involuntary speaking. *Id*. at 101-02. Thus, he opined that Appellant's statement was knowing, voluntary and intelligent. Nothing in the materials he reviewed suggested otherwise. *Id*. at 108.

Each of the police officers professed familiarity with the signs of drug withdrawal. Detective John McDermott of the Pennsylvania Office of the Attorney General initially placed Appellant under arrest and subsequently took a statement from him. Detective McDermott reported, "Physically, he was fine. He was aware of what was going on. He was cooperative." *Id*. at 178. The detective did not see any signs of shakiness, nausea, or agitation over the two days, nor did Appellant complain of being sick or experiencing withdrawal. On the second day, the detective accompanied Appellant to the bathroom. Appellant complained of painful urination, prompting

- 10 -

J-S41015-14

Detective McDermott to arrange for transportation to the hospital.  *Id*. at 179.

When Detective Kenneth Rossiter took Appellant's statement during the afternoon of November 20, 2007, Appellant appeared normal and had no complaints of stomach pain, nausea, or sickness.  *Id*. at 186.  He described Appellant as "coherent" and insisted that the words of Appellant's statement were verbatim.  He learned the next day that Appellant was taken to the hospital that evening, but that upon discharge, returned for a preliminary arraignment.  The parties stipulated that Sergeant Kuhlmeir would testify that he supervised the interrogation of Appellant.  He knew Appellant and his family from the neighborhood, which was why he had a specific recollection of the events and a desire to see that proper procedures were followed. Sergeant Kuhlmeir would have testified that he was present when the second statement was taken in an open room, that he did not witness Appellant suffering any withdrawal symptoms, and he heard no complaints of any medical problems.  *Id*. at 194.

The PCRA court agreed with Appellant that his claim had arguable merit in that trial counsel failed to examine the subpoenaed medical records and locate the documentation that Appellant had received methadone the day before his arrest.  That conclusion is challenged by the Commonwealth

J-S41015-14

herein.[1]  Furthermore, the court found no reasonable basis for counsel to

omit from the stipulation that the symptoms Appellant reported to the

hospital were ongoing for one day.  The court went on to hold, however, that

evidence that Appellant may have been going through withdrawal when he

provided statements to police, and the reported duration of the symptoms,

together with expert testimony, would not have affected the outcome of the

suppression motion nor was there a reasonable probability that it would

have changed the verdict.  N.T. PCRA Hearing, 7/15/13, at 15.[2]

_____

[1]  The Commonwealth contends that counsel's performance was "objectively
reasonable: he requested the records, made multiple calls to the facility,
sent a paralegal twice to look for the record, and then again subpoenaed the
records for trial."  Commonwealth's brief at 24.  Appellant counters that if
that is true, then the evidence is after-discovered since the records could not
have been discovered by due diligence prior to trial.  The latter argument
fails because the medical records indicating that Appellant received a dosage
of methadone on November 18, 2007 were in the possession of the defense
at the time of trial, and thus, not after-discovered.  To be entitled to relief
under the PCRA on the basis of after-discovered evidence, "the petitioner
must plead and prove by a preponderance of the evidence '[t]he
unavailability at the time of trial of exculpatory evidence that has
subsequently become available and would have changed the outcome of the
trial if it had been introduced.'    42 Pa.C.S.A. § 9543(a)(2)(vi)."
*Commonwealth v. Foreman*, 55 A.3d 532, 536 (Pa.Super. 2012).

[2]   Following the suppression hearing, the court made extensive factual
findings.  It found that Appellant's statements were not confessions; they
merely placed Appellant at the scene of the murder.  Appellant gave his first
statement within twelve hours of detention, and much of that time was
spent trying to identify the perpetrator named John.  The court noted that
Appellant corrected eight misspellings in his typed statement.  He was fed,
permitted to use the bathroom, and he never asked for methadone or
medical care.  N.T. Suppression, 5/4/2010, at 33.  Appellant's second
statement was made thirty-one hours after detention.  Appellant was
*(Footnote Continued Next Page)*

- 12 -

J-S41015-14

Appellant claims that the confession was "the crux of the Commonwealth's case[,]" Appellant's brief at 29, and the only evidence that established the commission of the felony underlying his second-degree murder conviction. *Id*. at 24. Furthermore, Appellant maintains that absent the statements, the evidence of guilt was not overwhelming. Appellant attacks the reliability of the testimony of Mr. Angely, who had a *crimen falsi* conviction, a pending drug case, and a motive for lying. Similarly, Mr. Wilson, Mr. Kedra, Ms. Blase and Mr. Barry, were not "slam dunk" witnesses for the Commonwealth. *Id*. at 29. Furthermore, Appellant alleges that the discovery of his bag on the rear porch of the murder scene months after the murder did not link him to the crime.

The PCRA court preliminarily noted that a person could be experiencing opiate withdrawal and still give a voluntary statement. N.T. PCRA Hearing, 7/15/13, at 7. It viewed withdrawal as "but one circumstance to consider in the totality-of-the-circumstances test" for determining whether a statement is voluntary. *Id*. at 8. Appellant's expert acknowledged that metabolism affected the speed of onset of withdrawal symptoms, and both experts agreed that Appellant's admitted concurrent use of other substances could affect the timing of withdrawal. Most telling,

*(Footnote Continued)* ————————————

described in hospital records as pleasant and cooperative, neat and appropriate. Furthermore, Appellant was released from the hospital after only three hours. *Id*. at 109.

- 13 -

J-S41015-14

according to the PCRA court, were the records of the hospital. As Dr. O'Brien observed, the medical records contained no report of objectively manifested symptoms of withdrawal such as vomiting or frequent urination. *Id*. at 10. Furthermore, hospital personnel prescribed low doses of sedatives and released Appellant within three hours, which suggested that withdrawal symptoms were not substantial. The court placed great weight on notations in the records that Appellant's appearance was "neat and appropriate" and that he was "irritable but cooperative;" his speech was "normal in tone, rate, and rhythm;" he was "oriented," "and his insight and judgment were fair." *Id*. at 12-13. The court concluded that the only new fact was that Appellant had received his last dosage of methadone twenty-four hours before he gave his first statement to police, and expert testimony that withdrawal could commence twenty-four to thirty-six hours after the last dosage. This would not have changed the result of the earlier suppression motion.[3] *Id*. at 14. The court also concluded that defense counsel's cross-examination was effective in informing the jury of the length of detention, the conditions, Appellant's psychiatric status, and the physical complaints that prompted the hospital visit. Despite the fact that the jury was not told that Appellant was on methadone maintenance, that it did not

---

[3] The PCRA court noted that at the time of the suppression hearing, it was aware that Appellant told hospital personnel that he was on methadone at the time.

J-S41015-14

hear expert testimony regarding withdrawal, and that Appellant reported that the symptoms were present for one day, the PCRA court found no reasonable probability "that the outcome of this trial would have been different had the jury received this information." *Id*. at 15. The court characterized Appellant's statements to his friends of involvement in the murder, five of whom testified at trial, as "overwhelming evidence of guilt," and that the experts' testimony regarding subjective and objective symptoms of withdrawal, as well as the medical records, militated against a finding that the police officers lied. *Id*. Since we find ample record support for the PCRA court's conclusions, this claim fails.

Appellant also argues that counsel was ineffective in failing to produce additional evidence, the cumulative effect of which would have undermined the voluntariness of Appellant's statements. *See Commonwealth v. Johnson*, 966 A.2d 523, 542 (Pa. 2009) (recognizing that where a court finds multiple instances of counsel's deficient performance, the assessment of prejudice properly may be premised upon the cumulative effect of those errors). The evidence to which Appellant initially refers is his statement at the hospital emergency room that his symptoms persisted for one day. Counsel omitted the duration of the symptoms from the stipulation presented to the jury.

The PCRA court considered the cumulative prejudicial effect of both the withdrawal evidence and the incomplete stipulation. It accorded greater

- 15 -

J-S41015-14

weight, however, to the medical records, which did not contain any documentation of physical signs of withdrawal upon Appellant's admission to the emergency room.   Additionally, only a low dose of medication was prescribed and Appellant was released in less than three hours.  This tended to suggest to the PCRA court that Appellant was not so debilitated as a result of methadone withdrawal that his statements were involuntary. Furthermore, the court found that the absence of noted objective signs of withdrawal in the medical records lent credence to the police officers' testimony that Appellant appeared fine and in no discomfort.   The record amply supports the court's findings.

Appellant also blames counsel for failing to debunk the notion that he attended Drexel University, contending that such a strategy would have tended to show police fabrication and/or demonstrate that Appellant was so debilitated by withdrawal that he could not provide accurate information. The misinformation was contained in Appellant's statement.  We find that proof of its falsity could have supported yet a third reasonable inference: that Appellant lied to police.  Given this downside of highlighting the factual inaccuracy, counsel cannot be deemed ineffective for declining to pursue that strategy.

In conclusion, we reject Appellant's claim that the cumulative effect of counsel's inadequacies was prejudicial, and deny relief.

Order affirmed.

- 16 -

J-S41015-14

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/23/2014