

R. SETH WILLIAMS
District Attorney

**DISTRICT ATTORNEY'S OFFICE**
THREE SOUTH PENN SQUARE
CORNER OF JUNIPER AND S. PENN SQUARE
PHILADELPHIA, PENNSYLVANIA 19107-3499
215-686-8000

Direct extension:     215-686-5706 (please note new number)
Fax:                         215-686-8725
john.goldsborough@phila.gov

October 20, 2016

Honorable Gerald A. McHugh
United States District Court
U.S. Courthouse
601 Market Street, Suite 9613
Philadelphia, Pennsylvania 19106-1742

     **Re:**    **Lazar v. Coleman, et al.**
               **Civil Action No. 14-6907**

Dear Judge McHugh:

     Enclosed please find a copy of our Response to Objections.

          Respectfully submitted,


          /s
          JOHN W. GOLDSBOROUGH
          Assistant District Attorney


/jwg
Enclosure
cc:    Jules Epstein, Esquire

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STEVEN LAZAR** | : | **CIVIL ACTION** |
| **V.** | : | |
| **BRIAN V. COLEMAN, ET AL.** | : | **NO. 14-6907** |

**O R D E R**

AND NOW, this _____ day of _____, 2016, after *de novo*

review as required by Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), and E.D. Pa. Local

Rule 72.1(IV)(b):

1.      Petitioner's Objections to the Magistrate Judge's Report and

Recommendation are overruled.

2.      The Report and Recommendation is approved and adopted.

3.      The petition for a writ of habeas corpus is denied and dismissed with

prejudice and without a hearing.

4.      A certificate of appealability is denied, as petitioner has not made a

substantial showing of the denial of a constitutional right, per 28 U.S.C. § 2253 and Slack

v. McDaniel, 529 U.S. 473, 484-85 (2000).

**BY THE COURT:**

_____

**GERALD A. MCHUGH, J.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STEVEN LAZAR** | : | **CIVIL ACTION** |
| **V.** | : | |
| **BRIAN V. COLEMAN, ET AL.** | : | **NO. 14-6907** |

**RESPONSE TO PETITIONER'S OBJECTIONS TO THE
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Respondents respectfully request that petitioner's objections (doc. 20) to the

Magistrate Judge's Report and Recommendation (doc. 18) be overruled and his one-claim

petition denied and dismissed with prejudice and without a hearing.  Petitioner presents

no legitimate reason to support his request that the Report and Recommendation be

rejected.  In general, respondents deny his allegations, including many misrepresentations

of the factual findings and legal conclusions of the state courts -- which, contrary to his

mischaracterizations throughout, and as respondents have already reminded him, are not

"lower" than federal courts.  See Sur-Reply (doc. 12) at 3 (discussing Burt v. Titlow, 134

S.Ct. 10, 15 (2013), and Harrington v. Richter, 562 U.S. 86, 92 (2011)).  As the Supreme

Court has repeatedly emphasized, habeas advocacy and review demands rigorous

adherence to the principles of federalism and comity, including that state courts are

coequal to federal courts, have concurrent jurisdiction, and must be treated with

deference, trust, and respect.  Petitioner knows that but has chosen to disregard it.

The 27 pages of objections (doc. 20, 1-20, together with seven more of

introductory "Case Summary" presented as an appendix, doc. 20 at 22-28) are a

rearranged cobble of the prolix professor's previous pleadings, with very little added.

This wastes the time and limited resources of this City-funded office, as well as of this

Court.  Respondents have already refuted the recycled matter.  For the most part, the

1

reasons for denying the objections and habeas relief are addressed in the Report and Recommendation (doc. 18), respondents' response to the petition for writ of habeas corpus (doc. 8, dated 3/9/15), and respondents' sur-reply (doc. 12, dated 5/26/15). Familiarity with them is assumed, and they are incorporated as though fully stated herein. Respondents generally rely upon these materials, and the state-court record as a whole, together with the following specific additions, to support their position that the Report and Recommendation should be adopted and the petition denied.

In sum, the Magistrate Judge was correct to conclude that the state courts acted reasonably under AEDPA, 28 U.S.C. § 2254 -- i.e., entered reasonable and presumed-correct factual findings given the evidence, and neither contradicted nor unreasonably applied Strickland v. Washington, 466 U.S. 668 (1984) -- when they denied petitioner's solitary claim on the merits after a full PCRA evidentiary hearing with dueling experts. They found trial counsel not ineffective for failing to bring out that petitioner had ingested his last dose of methadone just before he was arrested, instead of (as stipulated at trial, and as both sides then thought the clinic/hospital records showed) several weeks before that.  Under the circumstances of this case, as the state courts found, the required Strickland prejudice prong has not been shown, which means counsel was not ineffective. This denial of the claim was reasonable, as the Magistrate found.  Specific answers follow.


**"Case Summary"**

Initially, petitioner's "case summary," doc. 20 at 22-28, to which he refers as a preface to his "introduction," doc. 20 at 1 n.1, but which he attaches as an appendix, is

misleading, incorrect, and unsupported by citation to state-court findings, notes of testimony, and other key materials.

Significant deference is owed the state courts.  Petitioner's version is contrary to that, and it violates the applicable and binding legal standards.  Contrary to his repeated argument throughout his objections, those standards do include a strong presumption that the state courts' explicit ***and implicit*** factual findings are correct.  See 28 U.S.C. § 2254(e)(1) (determinations of factual issues made by state courts are presumed correct in habeas; burden on petitioner to rebut presumption by clear and convicting evidence); 28 U.S.C. § 2254(d)(2) (deference due to reasonable factual determinations; relief cannot be granted unless decision rested on state-court factual finding that is unreasonable in light of the evidence presented in the state courts); Parke v. Raley, 506 U.S. 20, 35 (1992) (implicit findings of fact are tantamount to express ones); Marshall v. Lonberger, 459 U.S. 422, 434 (1983) (inferences fairly deducible from state-court factual findings are also due deference); LaVallee v. Delle Rose, 410 U.S. 690, 692 (1973) (per curiam) (implicit factual findings of state court due presumption of correctness); Townsend v. Sain, 372 U.S. 293, 314 (1963) (if state court made no express factual findings on point, but denied claim, district court should assume state court implicitly found facts against petitioner); Weeks v. Snyder, 219 F.3d 245, 258 (3d Cir. 2000) (same; implicit factual findings due deference); Campbell v. Vaughn, 209 F.3d 280, 286, 288-290 (3d Cir. 2000) (federal court bound by state court's implicit resolution of credibility dispute); McAleese v. Mazurkiewicz, 1 F.3d 159, 171-72 (3d Cir. 1993) (same); Ahmad v. Redman, 782 F.2d 409, 413 (3d Cir. 1986) (same); Davenport v. DiGuglielmo, 215 Fed. Appx. 175, 179-180 (3d Cir. 2007) (not precedential) (same).

Other circuits agree.  See, e.g., Blankenship v. Hall, 542 F.3d 1253, 1271-72 (11th Cir. 2008); Garcia v. Quarterman, 454 F.3d 441, 444 (5th Cir. 2006); Sprosty v. Buchler, 79 F.3d 635, 643 (7th Cir. 1996); Ventura v. Meachum, 957 F.2d 1048, 1055 (2d Cir. 1992); Tinsley v. Borg, 895 F.2d 520, 524 (9th Cir. 1990); Crespo v. Armontrout, 818 F.2d 684, 686 (8th Cir. 1987).

Similarly, deference is also owed to the findings of fact made by state appellate courts.  See Sumner v. Mata, 449 U.S. 539, 546-47 (1981); Rolan v. Vaughan, 445 F.3d 671, 679 (3d Cir. 2006).

These lines of cases are closely related to the point that state-court credibility determinations are not up for re-consideration in federal habeas, but must be respected as final.  See Sur-Reply at 2-3 (discussing Miller v. Fenton, 474 U.S. 104, 114 (1985), Weeks v. Snyder, Culombe v. Connecticut, 367 U.S. 568, 603 (1961) ("all testimonial conflict is settled by the judgment of the state courts"), and other cases).

The factual and procedural history in this office's response (doc. 8) at 1-21, grounded in and with many citations to the state-court record, is a more objective and AEDPA standard-respecting version.  Respondents recommend it as a corrective to petitioner's advocacy-tainted account of matters.  Further, in the sur-reply (doc. 12), respondents provided additional documentation and factual explanation that refuted petitioner's continued misleading allegations, including copies of his three police confessions and the statements of the five friends and acquaintances to whom he confessed the murder.  See sur-reply throughout, including exhibits.

An overview, as detailed there, is as follows.  Petitioner, ostensibly with a friend named John who has never been located, chopped 79-year-old Dario Guttierez to death in

the face with an axe or hatchet while acting as his gay prostitute(s) and robbing him as planned.  The victim's daughter found his badly mutilated corpse several days later in his locked house, where he had lived alone.  The house had been ransacked, with dresser drawers opened and in disarray, and valuables including the victim's wallet, money, and house keys missing, but there was no sign of forced entry.  Police investigated but could find no leads worth pursuing.  As the victim's daughter was slowly cleaning out her father's packed house and yard months later, she found petitioner's suitcase there, containing his identifying information, right by the back door, under an awning.  Police then located petitioner at his methadone clinic and took a first statement from him on July 3, 2007, during which they let him drink some methadone, but did not tell him how the victim was killed, only that it was a beating.  He denied being inside the house and claimed his friend, John, with whom he had been doing drugs in an abandoned house when they split up, must have taken his bag and left it there.  Police gave him his bag back.

More months passed, during which petitioner told five of his friends and acquaintances that he and his friend had hacked the victim to death with a hatchet or axe, which only the actual murderer would have known.  Police, once informed of that, arrested petitioner and different detectives took two more statements from him, his second and third, on November 19 and 20, 2007.  Several hours after giving those statements, petitioner complained to the police of painful urination and was taken to the hospital, where he was briefly treated for that plus symptoms that did not explicitly include methadone withdrawal, then released quickly.

In the November 19 statement, he admitted agreeing to go to the victim's house

5

with John (who had a hatchet) for the purpose of robbing the victim but said they split up, with John taking petitioner's bag.  Petitioner came upon John later at the victim's house. When he arrived, John was covered in blood and opening drawers to find valuables while the bloody victim was lying on the floor.  Sur-Reply Exhibit B.  In the November 20 statement, he said they had gone there together, entering at the same time, to commit acts of prostitution as well as to commit robbery, and that they did both of those things, while John killed the victim and petitioner also hit him.  Sur-Reply Exhibit C.

At trial, counsel did not present evidence showing that when he was arrested, petitioner was still on methadone maintenance, having ingested his last dose shortly before his arrest (and was also taking drugs, legal and illegal, that suppress the effect of methadone withdrawal, as the hospital records showed).  Counsel had repeatedly attempted to obtain hospital methadone clinic records showing that, but all he received – repeatedly – from the hospital showed, or seemed to show, that petitioner's last dose of methadone came several weeks before his arrest.  Evidence later brought out showed that the hospital and its methadone clinic, though next door to each other, used different computer systems that did not communicate.

The only claim petitioner pursues in habeas – on which he had a full PCRA evidentiary hearing and PCRA round of state-court appeal with his current attorney – is whether trial counsel was ineffective for failing to present clinic records that showed petitioner had, in fact, been continuing his methadone maintenance treatment until just before being arrested.[1]  Had counsel shown the actual time of petitioner's last dose of

---

[1] It was stipulated during the PCRA proceedings that a thick and apparently redundant stack of hospital documents delivered to trial counsel just before trial, in an odd and non-
(footnote continued)

methadone was just before his arrest, per the PCRA experts' testimony and reports, he would then have been able to call his defense expert to testify -- and the Commonwealth would have called its expert to counter his expert -- at trial regarding the effect of that last dose on his last two police confessions.  In sum, the dueling experts would have testified (as they did at the PCRA hearing) that petitioner might or might not have been in a mild methadone withdrawal during his third and last (November 20, i.e., Sur-Reply Exhibit C) police statement, but not the second (November 19, Sur-Reply Exhibit B), or the first months before that (July 3, Sur-Reply Exhibit A).  And the police detectives who took the November statements, who were familiar with signs of opiate withdrawal, would also have testified, as they did at the PCRA hearing, that they saw no such signs in petitioner when he was giving them.  (And certainly, this had no effect on his five other confessions to friends and acquaintances in the interim.)

The PCRA experts agreed there would have been no effect on the second (November 19) police statement, because it was given before withdrawal symptoms would have begun.  They disagreed about whether symptoms would likely have been occurring during the third statement, and if so, what those symptoms would have been, especially given the quantity of the other medications petitioner was taking (as shown by, inter alia, the hospital records) that also happen to suppress withdrawal symptoms.  Only the Commonwealth expert – who is both a psychiatrist and an attorney – actually reviewed the third statement and provided both a medical and legal opinion regarding it.

---

responsive answer to his subpoena for a document custodian, somehow contained one page of later-faxed information showing that petitioner's treatment continued until the day before his arrest.  Counsel was thus, per the PCRA stipulation, incorrect to assume that all the sheets of paper in the last-second stack were identical to those delivered previously, though most were.

He testified that petitioner's November 20 statement was coherent and made sense; was voluntary, knowing, and intelligent; and was unaffected by any minor withdrawal effects (likely similar to the aches and sniffles of a cold or the flu) he might or might not have been experiencing then.  The defense expert, who thought petitioner was experiencing withdrawal symptoms of some sort during the November 20 statement, agreed that the Commonwealth expert's interpretation was possible.  In any event, both experts agreed that withdrawal symptoms do not cause false speaking or confessions.  The substance of the statement, its coherence and consistency with his prior statements and confessions to his five other friends/acquaintances, and with the physical evidence, was strong and confirmed its accuracy.

Thus, found the state courts, the effect of any evidence counsel might have presented at trial that petitioner was still on methadone maintenance at the time of his arrest, and might have been having mild methadone withdrawal symptoms at the time of the third statement, would not likely have made a difference in the verdict.  Had the jury heard the dueling experts to this effect, there would have been no reasonable probability of a different outcome, meaning the Strickland prejudice prong fails, and there is no ineffectiveness.

The Magistrate Judge correctly found that state-court determination reasonable, and thus recommended that habeas relief be denied.  That was correct and should, respectfully, be approved and adopted.  See Harrington v. Richter, 562 U.S. at 101, 105 (double deference applies to Strickland claim denied on merits by state court); Wong v. Belmontes, 558 U.S. 15, 20, 26 (2009) (per curiam) (court evaluating Strickland prejudice must consider all evidence, both good and bad, if counsel had taken course that

he or she is now accused of being bad for not taking).

**"Introduction"**

The first paragraph of petitioner's "Introduction", objections (doc. 20) at 1-2, is a reworking of petitioner's second full paragraph in his reply (titled "answer to the response"), doc. 9 at 2.  It is generally answered in respondents' sur-reply (doc. 12). "Throes" is an inaccurate word to describe petitioner's withdrawal symptoms, which were not visible, as respondents observed in the sur-reply (doc. 12) at 14-15.  Both experts agreed that there is a clear distinction between the initial subjective and mild but externally invisible withdrawal symptoms, such as a slow onset of aches and pains similar to the flu, that addicts first experience in the slow sequence of withdrawal symptoms, followed by still-mild but increasingly noticeable objective symptoms that could be noticed by other people, including such things as sniffling, which could easily be mistaken for something else like a cold.  The testimony and expert letter reports from the PCRA evidentiary hearing showed it was likely that even during petitioner's third statement, nothing was obviously wrong with him, although he may have been experiencing something akin to a cold or the flu, and police may have noticed that but thought it nothing out of the ordinary.  Police were unaware of any withdrawal symptoms at least until well after he gave the statements, if they even became aware then; petitioner never mentioned having symptoms of methadone withdrawal either to the police or to the hospital; and, per PCRA expert testimony, his stay at the hospital would not have been so brief had he complained of such symptoms.  Certainly, any withdrawal symptoms had no effect upon the voluntariness, intelligence, or knowing nature of his statement or waiver

of <u>Miranda</u> rights.

Per the PCRA hearing testimony, it is misleading to say that methadone withdrawal symptoms are "more severe" than those for heroin withdrawal, though they do last longer, since methadone washes out of one's system more slowly than heroin. Objections at 2. <u>See</u> Sur-Reply (doc. 12) at 13-14 (discussing).  The hospital records, as reviewed in the response and sur-reply, did not refute the police testimony, objections at 2, but confirmed it, as Dr. O'Brien testified, by showing that petitioner was not complaining of methadone withdrawal and did not have obvious symptoms of it.  The notion that there was an "alternative suspect," objections at 2, is false and misleading, unless one considers the many initial dead-end police inquiries that quickly proved fruitless.  Respondents refuted this mischaracteriziation in the Sur-Reply (doc. 12) at 20-21.  As there shown, Victor Barrios, a local drug dealer on whom petitioner now wishes to pin the murder, was one of the initial non-fruitful leads police investigated.  The victim had been known to chase drug dealers from his front steps, but the evidence showed Barrios was not involved.  Further, trial counsel was specifically told during the testimony of a police officer which other officer would know the most about Barrios – but, when that officer testified, counsel made an informed and telling choice not to ask that officer anything about Barrios.  <u>See</u> Sur-Reply at 20-21.

**Three numbered objections**

It is petitioner, not the Magistrate Judge or state court, who misapplies and misconstrues the <u>Strickland</u> prejudice prong.  Objections at 2, ¶1.  Contrary to his misleading pleadings, without <u>Strickland</u> prejudice, there is no ineffectiveness.  The

Magistrate fully considered and rightly rejected petitioner's argument that in determining Strickland prejudice, the state courts did not consider the entire record.  R&R (doc. 18) at 14-17.  Those courts actually did consider the entire record, however -- even though, as in virtually every case, petitioner can point to certain items in the record that the courts did not painstakingly list or explicitly deal with in their opinions.  That is not the standard, as the Magistrate Judge rightly found.  Because the state courts acted reasonably in denying this claim on the merits, the doubly deferential habeas standard applies, and petitioner's proffered approach that this Court should somehow grade the papers of the state courts is utterly inappropriate.[2]  In any event, the reasonable probability of a different verdict, per Strickland and cases construing it, must be assessed with regard to not only what was actually presented, but also what would have been presented by the prosecution in refutation had counsel taken the course he is being criticized for not taking.  Wong v. Belmotes, supra.  The state courts applied Strickland reasonably and followed that law, as the Magistrate found.

---

[2] It is the state court's **result** that is owed deference, not the reasoning employed to reach that result. Richter, 562 U.S. at 105; Lee v. Comm'r, Alabama Dep't of Corr., 726 F.3d 1172, 1211 (11th Cir. 2013) ("'[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence."); Means, Federal Habeas Manual § 3:70 (West 2014) ("Circuit courts are generally in agreement that § 2254(d)(1)'s 'unreasonable application' clause should be applied only to the result of a state court decision…") (collecting cases). Were it otherwise, the habeas statute would invite federal courts to engage in the "grading papers" approach the statute was meant to preclude. See, e.g., Hennon v. Cooper, 109 F.3d 330, 334-35 (7th Cir. 1997) (scrutinizing state courts' method of reasoning "would place the federal court in just the kind of tutelary relation to the state courts that [AEDPA was] designed to end").  The AEDPA created a standard that was intentionally "difficult to meet" because its purpose was to restrict habeas review, so that it would function as "a 'guard against extreme malfunctions in the state criminal justice systems,' and not as a means of error correction."  Greene v. Fisher, 132 S.Ct. 38, 43 (2011), quoting Richter, 562 U.S. at 102.

Petitioner's repeated argument that the well-settled law that not just explicit but also implicit factual findings by state courts are due the presumption of correctness on habeas review either does not exist, or should simply somehow be ignored, is ludicrous. Objections at 2 ¶1. <u>See</u> discussion above of 28 U.S.C. § 2254(e)(1), <u>Marshall v. Lonberger</u>, <u>LaVallee v. Delle Rose</u>, <u>Weeks</u>, <u>Campbell</u>, <u>Davenport</u>, and other such cases. The Magistrate did not err by following that well-settled law.

Petitioner again confusingly says he presented more than one claim in habeas. Objections at 2 ¶2. That is false. He even disclaimed that notion explicitly in his answer to the sur-reply, stating that he "raised a single claim in his habeas petition." Answer (doc. 13) at 1. That appears correct: he raised one ineffectiveness claim, which he had also raised in state court, and it was there denied on the merits after a hearing. That claim, to succeed in state court, required a showing of a reasonable probability that had counsel presented the methadone records, the verdict would have differed – that is, the <u>Strickland</u> prejudice prong. That showing was not made, and the claim failed, as the state courts found. Petitioner has never explained how his odd complaints that the state courts did not focus on the "reliability and accuracy" of his third confession to police, but only on its voluntariness (or his repeated mischaracterization of this as multiple claims), relate to <u>Strickland</u> prejudice or to the exhaustion of his one habeas claim. Even if, as appears to be true, he raised a second claim in the state courts that he does not raise today which somehow relates to "reliability and accuracy," as well as due process, that claim was not the same as, and was and is not merged with, the <u>Strickland</u> claim he exhausted and raises today, and it does not seem to have anything to do with <u>Strickland</u> prejudice. <u>See</u> sur-reply (doc. 12) at 27-29. The point is opaque, he has never clarified it, and this is not a

proper objection.

In any event, the "reliability and accuracy" of his statements to police, objections at 3 ¶2, were confirmed and corroborated by the forensic evidence – for example, the semen on the victim's pants, which as the Magistrate observed would not even have been tested but for the new detail in petitioner's third and final police confession that he (and his accomplice, if he existed) were acting as prostitute(s) for the victim, and other physical details he described that were as he said, including the open and rifled-through drawers.  It was also confirmed by the ***five*** other specific confessions that petitioner made to his friends and acquaintances that he had murdered a man by chopping him with an axe or hatchet.  And that, of course, was confirmed by the state of the victim's corpse (and specifically, face), though it was so mutilated that it was at first difficult to judge just what the weapon had been.  The experts confirmed during the PCRA hearing that even someone experiencing methadone withdrawal symptoms – if petitioner was experiencing any at all, a matter of debate – can still be accurate and reliable, as petitioner was in that third confession to police.

It is hard to understand petitioner's third numbered objection, objections at 3 ¶3. The Magistrate's determination that his third police confession (November 20) was not the only evidence of robbery is, in fact, accurate, for the reasons she provided.  R&R at 16-17.

**"Argument:  1"**

The first part of petitioner's "argument" section again objects to the application of

the well-settled line of cases requiring deference to implicit factual findings by state courts.  It is lifted wholesale from his reply.  Compare objections (doc. 20) at 3-5 with reply (doc. 9) at 16-18.  Respondents answered in the sur-reply (doc. 12), including at 3, 5, 20-21, and 24-27.

Certainly, contrary to his objection, the evidence was overwhelming, as the state courts and Magistrate found.  Petitioner's repeated confessions to his friends and neighbors, his suitcase at the scene with identifying information, and other things, ensured that.  The jury did not believe his trial impeachment of the five friends to whom petitioner confessed, and petitioner's attempts to re-litigate such credibility matters in federal habeas are entirely inappropriate.  The sheer number of his confessions to various individuals, the consistency of their accounts of what he told them, together with the other evidence (semen, suitcase, his own police confessions, etc.), plainly overwhelmed the tear-downs he attempted at trial.

Petitioner's reiterated statement of disagreement with Campbell v. Vaughn and Culombe v. Connecticut, objections at 5-7 (e.g., objecting to Magistrate's observation that the Superior Court's implicit finding is due deference), is misguided.  Those cases are not inapposite, despite his odd argument that they are.  Nor have they, or any of the many other cases in this line regarding deference due to implicit factual findings of state trial and appellate courts, been overruled – and petitioner does not mention or attempt to deal with those other cases here.  The judge who presided over trial was the same judge who conducted the PCRA hearing and made credibility determinations that led to her factual findings and conclusion that counsel was not ineffective.  She had a very good grasp of the evidence presented at both trial and the PCRA hearing, as well as of the jury's

implicit credibility determinations and findings that led to its verdict, contrary to petitioner's argument.

Further, no matter what the Third Circuit said in <u>Dennis v. Secretary, et al.</u>, ___ F.3d ___, 2016 WL 4440925, *12 (3d Cir. 2016), objections at 6-7, that court did not and could not overrule the Supreme Court precedents to the contrary.[3]  Nor did it disturb or even modify its own cases such as <u>Weeks</u> and <u>Campbell</u>.  Nowhere in <u>Dennis</u>, including in the section petitioner quotes, did the court discuss that line of cases, and what that court said and meant by the term "gap-filling" is unrelated to it.  The <u>Dennis</u> court was discussing <u>Richter</u>'s treatment of unarticulated ***legal*** theories that could have supported the state court's decision or result but were not among the reasons the state court provided in its opinion.  That is not the situation here.  The legal theory and reasoning applied here was never in doubt.  This claim was denied for lack of <u>Strickland</u> prejudice. <u>Dennis</u> did not concern what the Magistrate Judge was actually discussing here: ***factual*** findings, based on credibility determinations, that are implicit in a state court's denial of a claim after it held an evidentiary hearing on that claim, which concerned a multitude of factual allegations.  There is no law requiring that every court discuss or list every factor it considered or factual finding it made, or else is somehow presumed not to have considered it or rendered such a finding implicitly.  The law is, in fact, the opposite:  by denying a claim, a court often, if not always, implicitly makes factual findings against the claim's proponent.

Petitioner's objection makes no sense as applied, either.  Objections at 7.  He focuses only on what the Superior Court said when reviewing the PCRA court's

---

[3] This office is seeking a writ of <u>certiorari</u> in <u>Dennis</u>.

conclusions, complaining that it did not list or check off all the factors it was considering.

But no court ever does.  Further, that appellate court was relying on, and upholding, the

factual and legal determinations of the PCRA court after live testimony – which, again,

are never absolutely comprehensively articulated in any case, but are at least closer to the

live credibility determinations that fact-finder made.  These courts took into account,

implicitly or explicitly, all the matters presented to them, including (per the PCRA

testimony) petitioner's futile attempts to pressure and flip, or discredit the testimony

and/or police statements of, all of the friends and neighbors to whom he confessed with

great consistency to murdering an old man using an axe or hatchet -- and the discredited

false lead of Victor Barrios that police testified led nowhere, for various good reasons

(and as to whom, tellingly, petitioner's trial counsel decided not to question the pertinent

testifying officer, as respondents have explained above and in prior pleadings).  <u>See</u> reply

(doc. 9) at 7, sur-reply (doc. 12) at 20-21.

     The remainder of this first argument section, concerning how the prosecutor's

closing supposedly should have factored into the <u>Strickland</u> prejudice determination, was

already articulated in the reply (doc. 9) at 11, and answered in the sur-reply (doc. 12) at

23.


**"Argument:  2"**

     The second section of petitioner's objections, including its heading, is again

confusing regarding the number of claims before the Court.  Objections at 8-9.  Petitioner

raised only one claim in habeas, as mentioned above.  That claim was exhausted, denied

on the merits after a hearing, in state court, and the Magistrate Judge upheld that denial as

reasonable.  Thus, the objection that the Magistrate failed "to address a discrete claim," as petitioner states in his heading, makes no sense.  Objections at 8.  Perhaps the counseled petitioner is attempting to say that he inadvertently omitted a claim and wishes to bring it now.  If so, however, it is far too late, and that request should be denied.  And again, there is some confusion about the nature of his objection.  Petitioner still does not explain how "inaccuracy and unreliability," as opposed to "involuntariness," of his third police confession in any way relates to Strickland prejudice, the claim he presents today after exhausting it in the state court, or fair presentation.

Generally, however, this section of petitioner's objections is lifted from the reply (doc. 9) at 19-20, and was answered in the sur-reply at 27-29.  Petitioner's vaunting of his own PCRA expert's qualifications is inappropriate and is another inappropriate attempt to revisit the PCRA court's credibility determinations, an enterprise which is prohibited in habeas.  He also ignores that his own less-qualified expert, who was a psychiatrist but not an attorney, did not even read or consider the contents of petitioner's third police confession or how it fit with the rest of the case's evidence, and, because he did not have a law degree, could offer no legal opinion.  The Commonwealth expert, who did read and consider that confession as it related to the rest of the case, was both a psychiatrist and an attorney, was able to offer both a medical and legal opinion, and did.  ***Both*** dueling experts would have been presented, per Wong, under the probabilistic determination required by Strickland, and that would not have made out Strickland prejudice – i.e., a reasonable probability of a different verdict – as every court has agreed.  See Pinholster, 563 U.S. 201 (applying Belmontes); Williams v. Beard, 637 F.3d 195, 227-238 (3d Cir. 2011) (applying Belmontes).

**"Argument:  3"**

Petitioner admitted in his second police statement, which even his own expert agreed was utterly unaffected by any mild methadone withdrawal (e.g., sniffling or cold) symptoms, that he had agreed to be an accomplice to robbery, as well as that petitioner simply watched while his accomplice rifled through the victim's drawers looking for valuables while the victim lay covered in blood on the floor.  Objections at 10-13.  The evidence showed that the victim was robbed – the drawers were in fact opened and ransacked, in disarray, and the victim's keys, wallet, and money were gone with no explanation.

There is no inaccuracy or unfairness here.  Petitioner's third police confession was certainly not the sole proof of robbery, as the Magistrate rightly found.  And there was nothing wrong with the Magistrate relying upon the fact that petitioner's bag or suitcase was found at the scene with his identifying information in it, since that is the truth and further connects petitioner to this crime.  Petitioner attempts to re-litigate the significance of that, but this argument goes all the way back to trial, and, as a matter of credibility, that was fully put to rest then.  The rest of this section is generally lifted from petitioner's answer (doc. 13) at 4-5 and was fully considered by the Magistrate.

**"Argument:  4"**

The final section of the objections, 13-19, is a wholesale reproduction of the reply (doc. 9) at 19-25.  Respondents have already answered and refuted these arguments.  Sur-reply at 6, 14, 20-29.

**WHEREFORE**, respondents respectfully request that this Court approve and adopt the Magistrate Judge's Report and Recommendation after *de novo* review, as required by Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), and E.D. Pa. Local Rule 72.1(IV)(b); deny the petition for writ of habeas corpus; and deny a Certificate of Appealability under the standards articulated in 28 U.S.C. § 2253 and <u>Slack v. McDaniel</u>, 529 U.S. 473, 484-85 (2000).

Respectfully submitted,


/s
JOHN W. GOLDSBOROUGH
Assistant District Attorney
MAX C. KAUFMAN
Assistant Chief, Federal Litigation

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STEVEN LAZAR** | : | **CIVIL ACTION** |
| **V.** | : | |
| **BRIAN V. COLEMAN, ET AL.** | : | **NO. 14-6907** |

**CERTIFICATE OF SERVICE**

I, JOHN W. GOLDSBOROUGH, hereby certify that on October 20, 2016, a copy of the foregoing pleading was served by the Court's ECF system upon:

Jules Epstein, Esquire
Kairys Rudovsky Messing & Feinberg LLP
The Cast Iron Bldg., Ste. 501 South
718 Arch St.
Philadelphia, PA 19106

/s_____
JOHN W. GOLDSBOROUGH
Assistant District Attorney
District Attorney's Office
Three South Penn Square
Corner of Juniper and S. Penn Square
Philadelphia, PA 19107-3499
215-686-5706  (please note new number)